**WRIGHT v. COUCH et al.**

No. 897.

Court of Civil Appeals of Texas. Eastland.

Oct. 14, 1932.

Rehearing Denied Nov. 18, 1932.

James H. Beall, Jr., of Sweetwater, for appellant.

Mays & Perkins, of Sweetwater, for appellees.

FUNDERBURK, J.

D. R. Couch and G. C. Forgus sued Rufus Wright and recovered judgment against him upon a promissory note, with foreclosure of a chattel mortgage lien upon certain live stock. The trial court sustained a general demurrer of the plaintiffs to a cross-action of the defendant, and the correctness of that action of the court is the only matter presented upon this appeal for our review and determination.

The allegations in the cross-action were briefly to the effect that, in the deal by which the defendant leased from plaintiffs 4½ sections of land (owned by Couch) adjoining lands owned by the defendant, and purchased certain live stock, tools, and implements from plaintiffs for an agreed price of $3,985 cash, and $18,047.50 note (being the note sued on), the plaintiff made certain false and fraudulent representations. One (which as herein-after shown, we construe to be a warranty) was to the effect that 213 head of heifers and yearling steers (included in the purchase of live stock) would, on October 15, 1929, weigh an average of 700 pounds each. Another of the alleged representations made to induce the sale was to the effect that the leased land would not be sold during the term of the lease unless the owner (Couch) should die, or unless the sale was for as much as $50 per acre. The pleading, by reference, acknowledged a contract pleaded by the plaintiffs and evidencing the deal by which the sale of live stock was made, and the lease of the land agreed to be made, a provision of which contract was that the lease was to be subject to the right of sale by the owner of the land. Other allegations of the pleading were to the effect that defendant was not interested in the purchase of the live stock, but that he was interested in securing a lease of said lands, and that, in negotiating the deal, it was demanded of him, as a condition precedent to his obtaining the lease, that he should buy the live stock, tools, and implements; that defendant advised Forgus (one of the plaintiffs and acting for the plaintiffs) that defendant was not interested in the lease and certainly not in the live stock, tools, and implements unless he could have the lease for a number of years; that Forgus promised that he would endeavor to get Mr. Couch to lease it for four years, "further explaining, however, that in the face of the lease the said D. R. Couch would want to provide that the lease was subject to sale, the said Forgus, however, expressly explaining that he was familiar with the said D. R. Couch and by reason of his intimate close connection with him knew that this would only mean that the land might be sold only in case the said Couch should die and it should become necessary to sell it under that condition, or only in the event that said Couch could get a price for the land for as much as $50.00 per acre or above." By such representation and others the said Forgus assured the said defendant that the land would never be sold and that the defendant would have the use of it for the full term of said lease, even though a subject to sale clause was written into the face of the lease contract.

As to the guarantee (warranty) of the weight of the cattle, it was alleged that they failed to weigh 700 pounds each by a total of 14,249 pounds. Other allegations referred to the above mentioned guarantee as one of the "representations" complained of, and alleged that all said representations were false and were at the time made without intention to perform, etc. In short, the pleading contained the necessary allegations, we think, to show that the alleged false representations constituted actionable fraud if such could be shown by allegations additional to those

above mentioned. It was further alleged that the live stock, tools, and implements were sold by the defendant, and the sale price of the live stock was made the basis to show, in part, the measure of damages. It was alleged that Couch, within two or three months after making the contract, and while living, sold the land for much less than $50 per acre and demanded possession. There was no allegation that possession had been surrendered, nor offer to return anything received by defendant in the deal. The prayer was: "That the above and foregoing mentioned fraudulent sale and purchase of said livestock, etc., be rescinded and that the note as sued for in plaintiffs' original petition be cancelled, and that upon final hearing hereof the defendant have judgment for his damages in the principal sum of $2745.28, and for interest thereon," etc. The prayer also asked for general and special relief.

That the allegations in the cross-action stated no cause of action for rescission and cancellation is too certain to require discussion. Appellant did not in his brief or oral argument seek to sustain the pleading upon that theory. On the contrary it is his contention that the plea stated a cause of action for damages for false representations, and that the prayer for cancellation should be treated as inadvertent. Appellees, on the other hand, have construed the pleading as only attempting to state a cause of action for cancellation and by their brief have sought only to sustain the action of the court upon that theory. Since appellant, by his prayer above quoted, evidently at the time his pleading was filed, construed his cause of action as being for cancellation, he would perhaps have no just cause for complaint should we test the correctness of the court's action based alone upon that theory, same being, as it was, acquiesced in by all parties.

We prefer, however, to assume, without deciding, that the plea should be construed as attempting to state a cause of action for damages for false representations which induced the making of the contract in question, and to determine whether, as such, it was subject to the demurrer sustained by the court. The preceding statement is subject to the qualification that, in addition to a cause of action for fraud, there is attempted to be stated a cause of action based upon a warranty, as will hereinafter be shown.

The burden of appellant's argument is to show that promises to be performed in the future which induce the making of a contract may constitute fraud when made without intention at the time to perform and for the purpose of inducing another in reliance upon same to enter into the contract. The proposition urged is too well established as an exception to a general rule to require the citation of authorities. So far as we know, since the decision of the Supreme Court in Chicago, T.

& M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, no court in this state has denied such exception.

But the proposition is by no means conclusive of the question presented for our determination. False representations, whether regarding matters of present or past existence, or whether, (in the nature of promises) of future existence, do not constitute actionable fraud if the contract which it is claimed they induced specifically provides to the contrary of such representations and no claim is made that the contract does not express the true agreement. To hold otherwise would be to permit a party to a contract, while admitting its provisions and claiming its advantages, and while conceding that it was executed with full knowledge of its provisions, to prove by parol evidence that the parties intended that one or more provisions, although clear and unambiguous, were intended to mean something different from, and possibly contrary to, the provisions expressed. This would be a clear case of varying a written contract by parol evidence. If appellant accepted the lease in question, as the allegations show he did, knowing that it provided that his rights as lessee were subject to the right of Couch, the owner, to sell the land and thereby terminate the lease, he cannot show fraud by proof of representations that the land would not be sold except under certain conditions not expressed in the lease. The right of sale expressed in the lease was unqualified. To admit proof that it was only to be exercised in case the owner died, or a sale could be made for $50 per acre or more, would clearly result in varying that provision of the contract. Whatever the nature of the negotiations and preliminary agreements preceding the execution of the lease, no proof of same can, in a case like this, be permitted to contradict or qualify the expressed right of sale. Another way of stating the principle is that, when appellant accepted a lease, knowing that it was subject to the unqualified right of the owner to sell the land, he, as a matter of law, could not rely upon prior promises not to sell or to sell only upon the happening of specified contingencies.

We therefore conclude that the pleading alleged no cause of action based upon fraudulent representations to the effect that the land would not be sold unless the owner died or was sold for $50 per acre or more.

Let us consider now if the pleading stated a cause of action for a fraudulent representation to the effect that 213 head of the cattle would, on October 15, 1929, a little over four months after such representation was alleged to have been made, weigh on an average of 700 pounds each. Such a representation was either the expression of an opinion in the nature of a future prediction or else it was a warranty. Whether the one or the other, it

was not the representation of a present or past existing fact. Neither was it the expression of an opinion equivalent to the statement of a present or past existing fact. It is well settled that the statement of an opinion may sometimes be made under such circumstances as to be the equivalent of the statement of a material fact. For instance, let us suppose the allegation was to the effect that plaintiffs, being experienced cattlemen and capable of judging the weight of cattle, and defendant being inexperienced in such matters, which fact was known to the plaintiffs, the latter represented to defendant that the cattle would (then) average 700 pounds each. In that case the matter of opinion would be shown to be the equivalent of the statement of a present fact upon which, if the defendant relied, he would have the right to do so. But what right would the defendant have to rely upon a prediction that, over four months later, the cattle would average 700 pounds each? It would in no sense constitute the representation of a fact. Nor would it be an opinion in any way of the same nature as the statement of fact. While it was alleged that defendant was not at the time an experienced cattleman, and was not experienced in judging the weight of cattle, it was not alleged that plaintiffs were experienced cattlemen or had more experience than the defendant in judging the weight of the cattle. These or similar allegations would have been necessary to show the right of the defendant to rely upon an opinion as to the weight of the cattle as of the time the representations were made. If a right to rely upon a mere prediction could be shown in any case, which may be doubted, certainly there was an entire absence of allegations to show it here.

■■ If the representation in question cannot be regarded as a statement of a fact, nor the expression of an opinion of the general equivalent thereof, then what could it be and yet be regarded as a representation upon which a claim for damages could be predicated? It seems to us that it would have to be either a promise to be performed in the future or else a warranty. A false promise which may constitute fraud is a promise to do or refrain from doing something in the future, made without the intention to perform and for the purpose as a device to procure agreement of the other party to the terms of a proposed contract. Such a promise contemplates the exercise of volition upon the part of the promisor. In other words, it includes the essential idea of action or inaction on his part. The only action or want of action that could be involved in the representation that the cattle would, four months in the future, weigh on an average of 700 pounds each, would be to make good the loss or shortage. The representation, if not a warranty,

was a mere prediction as to the future condition of the cattle, and in no sense a promise to do or not to do something.

But the pleading, we think, plainly alleges a warranty. It alleges that Forgus (representing the plaintiffs) made the "very material representation to the defendant that *he would guarantee* that the 213 head of heifers and yearling steers * * * would weigh on an average of 700 pounds each on October 15th, 1929." (Italics ours.) The allegations to show a breach of the obligation were: "That plaintiffs have violated the representations which were made concerning the weights of said 213 head of heifers and yearling steers also. That said heifers and yearling steers failed to average a weight of 700 pounds per head on October 15th, 1929 *as guaranteed*, and represented by plaintiffs, but were about 14,249 pounds short of such weight, and that the plaintiffs, *instead of acknowledging an obligation upon their part to accept such loss in weight*, have refused to abide *by their guarantee and have refused to make such loss of weight good*." (Italics ours.) Plainly these are allegations of a contract obligation arising from the existence and breach of a warranty.

■ It becomes necessary then to consider the sufficiency of the pleading as alleging a cause of action upon a warranty. We think the pleading would be sufficient to state such a cause of action for at least nominal damages, but for the allegations as to the nature and provisions of the contract. Would defendant have the right to prove such a parol warranty and claim damages for its breach when, by his own allegations, same was a part of a transaction by which the sale of live stock, etc., to him and the lease of land to him was evidenced by a written contract? We are forced to the conclusion that defendant, by such parol proof, could not thus add to the obligations of the plaintiffs as expressed in the written contract. We know of no exception to the parol evidence rule which would permit this to be done.

In our original opinion we affirmed the judgment. On rehearing we reversed that action, holding the pleading good as stating a cause of action on the warranty. Upon consideration of appellees' motion for rehearing we have concluded that no right of action on the warranty was shown for the reasons discussed above. Our original disposition of the appeal was correct, but based upon the wrong ground. We have therefore decided to withdraw both opinions, the original and the one on rehearing, and to substitute this as the final opinion of the court.

Being of opinion that the judgment of the trial court should be affirmed, it is accordingly so ordered.